IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PAN AM DENTAL, INC.,                  )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )     CASE NO. CV418-288
                                      )
JOSHUA TRAMMELL and NEWHOPE           )
DENTAL LAB LLC,                       )
                                      )
         Defendants.                  )
_____           )
                                      )
JOSHUA TRAMMELL and NEWHOPE           )
DENTAL LAB LLC,                       )
                                      )
         Counterclaimants,            )
                                      )
v.                                    )
                                      )
PAN AM DENTAL, INC.,                  )
                                      )
         Counterclaim Defendant.      )
_____           )

## <u>O R D E R</u>

Before the Court is Defendants Joshua Trammell and NewHope Dental Lab, LLC's Motion for Partial Summary Judgment (Doc. 19), to which Plaintiff Pan Am Dental, Inc. has responded. For the following reasons, Defendants' motion (Doc. 19) is **DENIED**.

### BACKGROUND

This action arises from an independent contractor agreement between Plaintiff Pan Am Dental, Inc. ("Plaintiff") and Defendant Joshua Trammell. Plaintiff, a Georgia corporation with its

principal place of business in Georgia, "manufactures, produces, and sells synthetic and restorative dental products . . . to orthodontists, dentists, and other dental professionals throughout the country." (Doc. 20, Attach. 2 at ¶¶ 4-5; Doc. 24, Attach. 40 at ¶¶ 4-5.) These dental products include crowns, partial and full dentures, and orthodontic appliances. (Doc. 20, Attach. 2 at ¶¶ 4-5; Doc. 24, Attach. 40 at ¶¶ 4-5.)

On February 9, 2009, Plaintiff and Defendant Trammell, a North Carolina resident, entered into the first of several independent contractor agreements ("2009 Agreement"). (Doc. 20, Attach. 2 at ¶ 7; Doc. 24, Attach. 40 at ¶ 7.) Plaintiff hired Defendant Trammell to sell and market its products to dental professionals in a territory that included every county in North Carolina. (Doc. 24 at 2.) On December 6, 2013, Plaintiff and Defendant Trammell entered into a second independent contractor agreement ("2013 Agreement"). (Id. at 3.) In the 2013 Agreement, Defendant Trammell's territory again included every county in North Carolina. (Id.)

On January 1, 2016, Plaintiff and Defendant Trammell entered into a third independent contractor agreement ("2016 Agreement"). (Id.) This agreement expanded Defendant Trammell's territory to include all counties in North Carolina and most counties in South Carolina. (Id.) In November 2017, Plaintiff terminated the 2016 Agreement and the parties began negotiating a new agreement. (Id.)

2

During negotiations, Defendant Trammell proposed that his territory include all counties in North Carolina, but he requested that Plaintiff remove any counties in South Carolina from the territory. (Doc. 35, Attach. 1 at 38.) In addition, Defendant Trammell requested that his territory include all Friendly Neighborhood Dental locations. (Id.) Friendly Neighborhood Dental is a large group which, at the time of the negotiations, had eighteen offices in North Carolina and two offices in South Carolina. (Id.) Plaintiff agreed to Defendant Trammell's proposed territory, and, on January 1, 2018, the parties executed their fourth independent contractor agreement ("2018 Agreement"). (Doc. 20, Attach. 1 at 7-11; Doc. 24, Attach. 40 at ¶ 14.) The 2018 agreement forms the basis of this action.

The 2018 Agreement contains multiple restrictive covenants in Article 2 and Article 6. (Doc. 20, Attach. 1 at 7-8.) Article 2 governed Defendant Trammell's activity during the term of the agreement and includes Section 2.1 and Section 2.2. (Id.) Section 2.1 provides:

> Contractor is granted the authority to solicit orders for Pan-Am in a territory specifically assigned and attached hereto as **Exhibit A**, and shall use their best efforts to sell products on behalf of Pan-Am as a sales representative to accounts located in this territory. Contractor acknowledges that Pan-Am may, choose to supplement him with additional sales representatives in his assigned territory, expand or restrict the territories assigned to him, reassign him to another territory, or assign him alternative duties in

3

> accordance with what Pan-Am deems to be in the best
> interests of the business.

(Id. (emphasis in original)) Exhibit A identifies the territory as the entire state of North Carolina "with the addition of all Friendly Neighborhood Dental locations." (Id. at 11.) In addition, Section 2.2 of the 2018 Agreement provides:

> During the term of this Agreement, Contractor agrees to
> devote Contractor's entire working time to promote the
> sales of Pan-Am's products and benefit the business of
> Pan-Am. Unless otherwise authorized by Pan-Am in a
> writing signed by the parties, Contractor shall not,
> during the term of this Agreement, knowingly act on
> behalf or in the interest of any other person, firm,
> corporation, or other entity. Contractor may make
> passive investments as long as such investments are not
> made in or with companies in competition with Pan-Am.

(Id. at 8.)

Article 6 of the 2018 Agreement governs Defendant Trammell's post-employment business endeavors. (Doc. 24, Attach. 40 at ¶ 22.) Section 6.1 provides:

> Contractor acknowledges that the restrictive covenants
> contained in this section concerning Pan-Am's
> Information, the solicitation of Pan-Am's customers or
> employees, and the performance of the same work for a
> competitor in the territory outlined in Exhibit A are
> presumed to be valid and enforceable by the Georgia
> Restrictive Covenant Act.

(Doc. 20, Attach. 1 at 9.) The restrictive covenants at issue are contained in Section 6.1.2. Section 6.1.2 provides:

> During the term of Contractor's agreement with Pan-Am,
> and for a period of two (2) years following the date of
> the termination, Contractor shall not compete directly
> with Pan-Am by performing the same or substantially
> similar duties for a competitor nor will you solicit, or

4

attempt to solicit, any customer for purposes of
providing products or services that are competitive with
those offered by Pan-Am within the geographical
territory in which Contractor is working.

(Id. at 9.)

Defendant Trammell worked for Plaintiff for several months
after they executed the 2018 Agreement, however, on June 15, 2018,
Defendant Trammell resigned from his position with Plaintiff.
(Doc. 20, Attach. 1 at ¶ 33; Doc. 24, Attach. 40 at ¶ 33.) Prior
to his resignation, on March 20, 2018, Defendant Trammell filed
articles of organization for his business, Defendant NewHope
Dental Lab, LLC ("NewHope"), with the North Carolina Secretary of
State. (Doc. 24 at 5; Doc. 24, Attach. 27.)

On December 7, 2018, based on Defendant Trammell's formation
of Defendant NewHope, Plaintiff brought this action against
Defendants Trammell and NewHope seeking recovery for Defendant
Trammell's alleged breach of the 2018 Agreement. (Doc. 1.) On May
20, 2019, Defendants filed a Motion for Partial Summary Judgment
seeking dismissal of Count II and Count III of Plaintiff's
complaint. (Doc. 19.)

In Count II, Plaintiff alleges that Defendant Trammell
breached the restrictive covenants contained in Section 6.1.2.
(Doc. 1 at ¶¶ 43-49.) In Count III, Plaintiff alleges that
Defendant Trammell breached Article 2 of the 2018 Agreement. (Id.
at ¶¶ 50-56.) Defendants contend that summary judgment is

appropriate on Counts II and III because Section 6.1.2, Section 2.1, and Section 2.2 are unenforceable as a matter of law. (Doc. 20.) In response, Plaintiff contends that the restrictive covenants contained in these sections are enforceable under the Georgia Restrictive Covenants Act ("GRCA"), O.C.G.A. § 13-8-50, et seq.

**ANALYSIS**

I.   STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

> As the Supreme Court explained:
>
> > [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586, 106 S. Ct. at 1356. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to

7

grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

II.   <u>ENFORCEABILITY OF SECTION 6.1.2</u>

To begin, Defendants argue that summary judgment should be granted in their favor on Count II because Section 6.1.2 is void and unenforceable under the GRCA.[1] (Doc. 20 at 6.) Specifically, Defendants contend that Section 6.1.2 contains two separate restrictive covenants—a non-competition covenant and a non-solicitation covenant—that both fail to meet the requirements of O.C.G.A. § 13-8-53. (<u>Id.</u>) In response, Plaintiff argues that the covenants meet the requirements of § 13-8-53 and are necessary to protect Plaintiff's legitimate business interests.[2] (Doc. 24 at

---

[1] In this case, the parties agree that the 2018 Agreement is governed by the laws of the State of Georgia. (Doc. 20 at 6 n.4; Doc. 24 at 9.) Moreover, Article 9 states that "[the 2018 Agreement] shall be governed by and construed in accordance with the laws of the State of Georgia." (Doc. 20, Attach. 1 at 10.) "Georgia will honor choice of law provisions unless no reasonable basis exists for doing so or [] application of the chosen state's law is contrary to a fundamental policy of Georgia which has a materially greater interest in the issue than the chosen state." <u>Bryan v. Hall Chem. Co.</u>, 993 F.2d 831, 834 (11th Cir. 1993); <u>see also Carr v. Kupfer</u>, 250 Ga. 106, 107, 296 S.E.2d 560, 562 (1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause."). Accordingly, the Court will analyze the provisions at issue under the laws of the State of Georgia, including the GRCA.
[2] O.C.G.A. § 13-8-55 requires "[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Legitimate business interests include " '[s]ubstantial relationships with specific prospective or existing customers . . . or clients' and 'client good will.' " <u>Kennedy v. Shave Barber Co., LLC</u>, 348 Ga. App. 298, 305, 822 S.E.2d 606, 612 (Ga. Ct. App.

9.) "Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court." Clark v. Johnson Truck Bodies, LLC, No. CV411-132, 2012 WL 1014827, at *5 (S.D. Ga. Mar. 23, 2012) (quoting Uni-Worth Enters. V. Wilson, 244 Ga. 636, 640, 261 S.E.2d 572, 575 (1979)). Accordingly, the Court will address the enforceability of the non-competition covenant and the non-solicitation covenant contained in Section 6.1.2 in turn.

A. Non-Competition Covenant

Section 6.1.2's non-competition covenant states:

> During the term of Contractor's agreement with Pan-Am, and for a period of two (2) years following the date of the termination, Contractor shall not compete directly with Pan-Am by performing the same or substantially similar duties for a competitor . . . within the geographical territory in which Contractor is working.

---

2018) (quoting O.C.G.A. § 13-8-51(9)(C)-(D)). Here, Plaintiff claims that the restrictive covenants "are necessary to protect the legitimate interests of [Plaintiff], including customer relationships and confidential information that it entrusted to [Defendant] Trammell, as well as [Plaintiff's] goodwill in the dental market." (Doc. 24 at 2.) Particularly, Plaintiff highlights that Defendant Trammell "was [its] primary representative (and at most times throughout his relationship with [Plaintiff], the only representative) within North Carolina and to all Friendly Neighborhood Dental locations." (Id. at 13.) Defendants do not contest that Plaintiff had a legitimate business interest justifying the non-competition and non-solicitation covenants. Moreover, it is undisputed that Defendant Trammell spent years cultivating relationships with customers throughout North Carolina and with the Friendly Neighborhood Dental group. Accordingly, the Court finds that Plaintiff "had a legitimate business interest in protecting itself from the risk" that Defendant Trammell "might appropriate customers by taking advantage of the contacts developed while" he worked for Plaintiff. Kennedy, 348 Ga. App. at 305, 822 S.E.2d at 612.

9

(Doc. 20, Attach. at 9.) Defendants argue that the covenant is unenforceable because it contains an unreasonable and uncertain geographic restriction.[3] (Doc. 20 at 7.) Specifically, Defendants contend that Section 6.1's geographic restriction is different than that in Section 6.1.2, and, therefore, the scope of the restriction is uncertain. (Doc. 20 at 7.)

In response, Plaintiff argues that the geographic area is "clearly identified as the territory in Exhibit A to the [2018] Agreement" and that Exhibit A "provided [Defendant] Trammell with fair notice of the maximum reasonable scope of the restraint[] at the time of his termination." (Doc. 24 at 10; Doc. 35 at 1.) In the alternative, Plaintiff argues that if the Court were to find the geographic area contained Section 6.1.2 overly broad or ambiguous, the Court could modify the non-competition covenant. (Doc. 24 at 11.) The Court finds that there is no need for

---

[3] Defendants also argue that Defendant Trammell was not a "key employee" for Plaintiff, and, therefore, cannot be subject to a non-competition covenant. (Doc. 29 at 12.) Under O.C.G.A. § 13-8-53(a), a non-competition covenant may be enforced after a term of employment against any employee who "[c]ustomarily and regularly solicit[s] for the employer customers or prospective customers" or "[c]ustomarily and regularly engage[s] in making sales or obtaining orders or contracts for products . . . ." It is clear from Defendant Trammell's deposition testimony and from his e-mails to Plaintiff's President, Jim Hitch, that Defendant Trammell regularly solicited customers for Plaintiff and sold Plaintiff's products. (Doc. 24, Attach. 7 at 2; Doc. 35, Attach. 1 at 23.) As such, the Court finds that Defendant Trammell is exactly the type of employee who may be subject to a non-competition covenant under the GRCA.

modification of Section 6.1.2 because the applicable geographic area is reasonable and unambiguous.

"Applying to employment agreements entered into after May 11, 2011, the [GRCA] governs the restrictive covenants in this case." Kennedy v. Shave Barber Co., LLC, 348 Ga. App. 298, 301, 822 S.E.2d 606, 610 (Ga. Ct. App. 2018). The GRCA generally permits non-competition covenants "so long as [they] are reasonable in time, geographic area, and scope of prohibited activities . . . ." O.C.G.A. § 13-8-53(a). In determining the reasonableness of a geographic restriction, the Court shall presume

> [a] geographic territory which includes the areas in which the employer does business at any time during the parties' relationship, even if not known at the time of entry into the restrictive covenant, is reasonable, provided that: (A) the total distance encompassed by the provisions of the covenant also is reasonable . . . .

O.C.G.A. § 13-8-56(2). The GRCA further provides:

> Whenever a description of . . . geographic areas, is required by this Code section, any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement, even if the description is generalized or could possibly be stated more narrowly to exclude extraneous matters.

O.C.G.A. § 13-8-53(c)(1).

In this case, Defendant Trammell knew his territory included the State of North Carolina and all locations of the Friendly Neighborhood Dental group. There is evidence that Defendant Trammell conducted extensive business on behalf of Plaintiff throughout North Carolina. (Doc. 24, Attach. 7 at 2; Doc. 35,

11

Attach 1 at 38.) In fact, in an e-mail to Jim Hitch, the President of Plaintiff, Defendant Trammell stated that he had "tremendous clout and relationships with in [sic] the state" and that Defendant Trammell wanted to "concentrate on just [North Carolina] and continue to grow [his] state." (Doc. 24, Attach. 7 at 2.) Accordingly, a geographic restriction that includes the entire state of North Carolina is reasonable. See Heartland Payment Sys., LLC v. Stockwell, No. 1:19-CV-05327-SDG, 2020 WL 1129861, at *4 (N.D. Ga. Mar. 5, 2020) (finding a geographic restriction including two states reasonable because the employee worked for the employer throughout both states).

Moreover, Defendant Trammell requested that the Friendly Neighborhood Dental group be included in the territory he worked. (Doc. 35, Attach. 1 at 38.) Defendant Trammell stated in his deposition that he "wanted to hold onto the group as a whole" because "[t]hey're a large group in North Carolina that has 18 offices in North Carolina and only two in South Carolina." (Id.) Because Defendant Trammell proposed that he work only in the State of North Carolina and with all Friendly Neighborhood Dental locations, he could easily determine the maximum scope of the non-competition covenant's geographic restriction. See O.C.G.A. § 13-8-53(c)(2) ("The phrase 'the territory where the employee is working at the time of termination' or similar language shall be considered sufficient as a description of geographic areas if the

12

person or entity bound by the restraint can reasonably determine the maximum reasonable scope of the restraint at the time of termination."). Accordingly, Section 6.1.2's restriction of "the geographical territory in which Contractor is working" is certain and reasonable because Defendant Trammell requested that he only work in North Carolina and with a specific dental group. See Burson v. Milton Hall Surgical Assoc., LLC, 343 Ga. App. 159, 163, 806 S.E.2d 239, 243 (Ga. Ct. App. 2017) (finding a non-competition covenant unambiguous where "the covenant does not leave open the possibility of the restricted territory's inclusion of areas where the [employee has] ceased working" because it "extend[s] only to the geographical area in which the [employee] is working at such time").

Defendant is correct that Section 6.1's geographic restriction also applies to the non-competition covenant, but its application does not make the geographic area indeterminable. To the contrary, Section 6.1, as the overview paragraph of Section 6.1.2, limits the non-competition covenant's reach to only the territory outlined in Exhibit A.[4] (Doc. 20, Attach. 1 at 9.) The

---

[4] Even if the geographic restriction contained in Section 6.1.2 made the geographic area of the non-competition covenant vague, the GRCA provides that "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." O.C.G.A. § 13-8-53(d). By eliminating the restriction "the geographical territory in which Contractor is working" from Section 6.1.2, only

"geographical territory in which [Defendant Trammell is working,"
therefore, reaches only as far as the territory in Exhibit A—that
is, North Carolina and all Friendly Neighborhood Dental locations.[5]
As a result, the Court finds this geographic restriction of the
non-competition covenant is certain and reasonable.

   B. Non-Solicitation Covenant

   In addition to the non-competition covenant, Section 6.1.2
contains a non-solicitation covenant which states, in pertinent
part:

_____

the geographic restriction in Exhibit A would govern to the
non-compete covenant. The Court does not find it necessary to
modify the provision, however, such a modification would be
reasonable. See Kennedy, 348 Ga. App. at 305, 822 S.E.2d at 612
(concluding that the trial court's modification from "any location
of the employer" to "the three-mile radius surrounding the
[employer's] current location" eliminated any uncertainty in the
geographic scope of the non-compete).

[5] Plaintiff, for the first time, asserts that Defendant Trammell is
also prohibited "from competing against [Plaintiff] and from
soliciting [Plaintiff's] customers in the counties in South
Carolina listed in Exhibit A to the 2016 Agreement from December
15, 2017 until December 15, 2019." (Doc. 35 at 17.) The Court finds
this argument unpersuasive. The 2018 Agreement contains a merger
clause which states that the agreement "shall serve to supersede
and replace any prior written or oral agreement." (Doc. 20, Attach.
1 at 7.) The "language of the superseding-agreement clause is clear
and unambiguous: the later-entered agreement replaces in their
entirety all earlier-entered agreements that concerned a similar
subject matter." Belt Power, LLC v. Reed, No. A19A1824, 2020 WL
1150059, at *2 (Ga. Ct. App. Mar. 10 2020) (quoting MAPEI Corp. v.
Prosser, 328 Ga. App. 81, 86, 761 S.E.2d 500, 504 (Ga. Ct. App.
2014)). Accordingly, the Court finds that any restriction in the
2016 Agreement has been superseded by the 2018 Agreement. Based on
the 2018 Agreement, Plaintiff concedes that the non-competition
covenant in the 2018 Agreement does not extend to South Carolina
except any Friendly Neighborhood Dental locations within the
state. (Doc. 35 at 17.)

> During the term of Contractor's agreement with Pan-Am, and for a period of two (2) years following the date of termination, Contractor shall not . . . solicit, or attempt to solicit, any customer for purposes of providing products or services that are competitive with those offered by Pan-Am within the geographical territory in which Contractor is working.

(Doc. 20, Attach. 1 at 9.) For their part, Defendants contend that the non-solicitation provision is overly broad and unenforceable because it applies to "any" customer of Plaintiff. (Doc. 20 at 15-16.)

> Pursuant to O.C.G.A. § 13-8-53(b), an employee may agree
>
> to refrain, for a stated period of time following termination, from soliciting, or attempting to solicit, directly or by assisting others, any business from [the] employer's customers, including actively seeking prospective customers, with whom the employee had material contact during his or her employment for purposes of providing products or services that are competitive with those provided by the employer's business . . . .

O.C.G.A. § 13-8-53(b). In reference to language about "any" customers of the employer, the GRCA further provides:

> Any reference to a prohibition against 'soliciting or attempting to solicit business from customers' or similar language shall be adequate for such purpose and narrowly construed to apply only to: (1) such of the employer's customers, including actively sought prospective customers, with whom the employee had material contact; and (2) products or services that are competitive with those provided by the employer's business.

O.C.G.A. § 13-8-53(b).

As previously mentioned, the restrictive covenants in Section 6.1.2 are limited in scope by Section 6.1. Section 6.1 limits the

covenants' application to customers within the territory outlined in Exhibit A. Accordingly, the non-solicitation covenant prohibits Defendant Trammell from soliciting, or attempting to solicit, customers in the State of North Carolina and soliciting any business from the Friendly Neighborhood Dental group.

As an initial matter, prohibiting Defendant Trammell from soliciting the Friendly Neighborhood Dental group is consistent with the requirements of the GRCA. See Cunningham Lindsey U.S. LLC v. Box, No. 1:18-cv-04346-WMR, 2018 WL 10560768, at *3 (N.D. Ga. Dec. 4, 2018) (concluding that a non-solicitation covenant prohibiting the former employee from soliciting "any of the customers of [the employer] contained in the Customer List" was enforceable and "consistent with the parameters set forth in O.C.G.A. § 13-8-53(b)"). In addition, prohibiting Defendant Trammell from soliciting any customers in North Carolina is reasonable if narrowly construed to apply only to customers that Defendant Trammell had material contact with during his work for Plaintiff. See PointeNorth Ins. Group v. Zander, No. 1:11-CV-3262-RWS, 2011 WL 4601028, at *3 (N.D. Ga. Sept. 30, 2011) ("[W]hile the Court finds the restrictive covenants overbroad in that they extend to 'any of the Employer's clients'—not just the ones with whom [the former employee] interacted—the Court may remedy that finding by blue penciling the provision to only apply to customers that the [employee] contacted and assisted . . . ."). Accordingly,

the Court construes Section 6.1.2's non-solicitation covenant as such and finds the covenant enforceable. As a result, Defendants' partial motion for summary judgment on Count II is **DENIED**.

## III. ENFORCEABILITY OF SECTION 2.1 AND SECTION 2.2

Defendants also argue that the Court should grant summary judgment in their favor on Count III because "it seeks to enforce a pair of non-competition covenants disguised as 'best efforts' clauses." (Doc. 20 at 17.) Specifically, Defendants contend that Section 2.1 and Section 2.2 are "unenforceable restraints of trade." (Id. at 18.) In response, Plaintiff argues that Section 2.1 and Section 2.2 are reasonable and enforceable restrictive covenants under O.C.G.A. § 13-8-56(4). The Court will address the enforceability of Section 2.1 and Section 2.2 in turn.

### A. Section 2.1

To begin, Section 2.1 of the 2018 Agreement provides, in pertinent part:

> Contractor is granted the authority to solicit orders for Pan-Am in a territory specifically assigned and attached hereto as **Exhibit A,** and shall use their best efforts to sell products on behalf of Pan-Am as a sales representative to accounts located in this territory.

(Doc. 20, Attach. 1 at 7–8 (emphasis in original).) Defendants argue that Section 2.1 is not a restrictive covenant subject to the GRCA, but, rather, a restraint of trade. In turn, Defendants contend that the Court should apply Georgia common law to invalidate Section 2.1 because it "prohibit[s] [Defendant]

17

Trammell from selling products for any business other than [Plaintiff]." (Doc. 20 at 18; Doc. 29 at 15.)

Relying on Georgia common law, Defendants cite to Early v. MiMedx Group, Inc., 330 Ga. App. 652, 768 S.E. 2d 823 (Ga. Ct. App. 2015), for support that Section 2.1 unreasonably restricted Defendant Trammell during the term of the 2018 Agreement. (Doc. 20 at 18.) The provision at issue in Early, however, is distinguishable from Section 2.1. 330 Ga. App. 652, 653, 768 S.E. 2d 823, 825 (Ga. Ct. App. 2015) The provision in Early "specified that [the employee] would 'devote her full working time . . . to [the] performance of [her] duties hereunder.' " Id. Whereas, Section 2.1 required Defendant Trammell to use his "best efforts" to sell Plaintiff's products during the term of the 2018 Agreement. Accordingly, Defendants have failed to provide any support from Georgia common law that Section 2.1 is unenforceable.

Alternatively, Defendants argue that if Section 2.1 is governed by the GRCA, the provision is still unenforceable because it lacks a durational limitation as required by O.C.G.A. § 13-8-53(a). (Doc. 29 at 16.) The Court finds Defendants' argument on this point unconvincing. Although O.C.G.A. § 13-8-53(a) requires that restrictive covenants be "reasonable in time, geographic area, and scope of prohibited activities," Section 2.1 operated to restrict Defendant Trammell during the period he worked

18

for Plaintiff. Accordingly, O.C.G.A. § 13-8-56(4) governs Section 2.1 and provides:

> Any restriction that operates during the term of an . . . independent contractor relationship, . . . shall not be considered unreasonable because it lacks any specific limitation upon scope of activity, duration, or geographic area so long as it promotes or protects the purpose or subject matter of the agreement or relationship or deters any potential conflict of interest.

O.C.G.A. § 13-8-56(4). The Court finds that Section 2.1's "best efforts" clause reasonably deterred potential conflicts of interest between Defendant Trammell, Plaintiff, and other competing businesses in the dental products market. Accordingly, the Court finds that Section 2.1 is enforceable.

### B. Section 2.2

As for Section 2.2, it provides:

> During the term of this Agreement, Contractor agrees to devote Contractor's entire working time to promote the sales of Pan-Am's products and benefit the business of Pan-Am. Unless otherwise authorized by Pan-Am in a writing signed by the parties, Contractor shall not, during the term of this Agreement, knowingly act on behalf or in the interest of any other person, firm, corporation, or other entity.

(Doc. 20, Attach. 1 at 8.) Again, Defendants argue Section 2.2 is unenforceable because it is an unreasonable restraint of trade and not subject to the GRCA. Relying on Georgia common law, Defendants contend that Section 2.2 is invalid because it required Defendant Trammell to devote any working time to Plaintiff's business. (Doc. 20 at 18.) Plaintiff does not dispute that Section 2.2 prohibited

Defendant Trammell from working anywhere else, whether or not that work was in competition with Plaintiff's business.

In this instance, Early is instructive because the provision at issue in Early is comparable to Section 2.2. In Early, the Court of Appeals of Georgia considered whether an in-term covenant that required the former employee to "devote her full working time . . . to [the] performance of [her] duties hereunder" was enforceable. Early, 330 Ga. App. at 657, 768 S.E. 2d at 827-828. Because the provision prohibited the employee "from doing any work whether in competition with [the employer] or not," the appeals court held that the provision was an illegal "restraint of trade, rather than a loyalty provision." Id., 330 Ga. App. at 659, 768 S.E.2d at 828. Importantly, the Court of Appeals highlighted that the contract at issue was not governed by the GRCA because it was executed before May 2011. Id., 330 Ga. App. at 659 n.9, 768 S.E. 2d at 828 n.9.

Similar to the provision in Early, Section 2.2 prohibited Defendant Trammell, during the term of the agreement, from performing any other work, whether in competition with Plaintiff or not. Unlike the agreement in Early, the 2018 Agreement was executed after May 2011 and, therefore, is presumably governed by the GRCA. Accordingly, the Court must determine whether Section 2.2 is a restrictive covenant governed by the GRCA and or a restraint of trade governed by Early.

20

Defendants argue that Section 2.2, unlike Sections 6.1 and 6.1.2, is not governed by the GRCA because it is not a restrictive covenant. (Doc. 29 at 14.) The Court finds this argument unpersuasive. The GRCA defines "restrictive covenant" as

> an agreement between two or more parties that exists to protect the first party's . . . interest in property, confidential information, customer good will, business relationships, employees, or any other economic advantages that the second party has obtained for the benefit of the first party or parties [or] to which the second party has gained access in the course of his or her relationship with the first party or parties . . . .

O.C.G.A. § 13-8-51(15). Section 2.2 clearly acts as an agreement between Defendant Trammell and Plaintiff to protect Plaintiff's interest in the business relationships Defendant Trammell cultivated on Plaintiff's behalf. As a result, the Court finds that the GRCA governs Section 2.2 and, therefore, the decision in Early does not render the provision unenforceable. See Legacy Data Access, LLC v. Mediquant, No. 3:15-cv-00584-FDW-DSC, 2017 WL 6001637, at *14 (W.D. N.C. Dec. 4, 2017) ("[T]he common law has been superseded for contracts entered after May 11, 2011 by an amendment to the Georgia Constitution and the enactment of the Restrictive Covenant Act.").

Next, Defendants argue that even if the GRCA applies to Section 2.2, the provision is unenforceable because it lacks a geographical limitation. (Doc. 29 at 16.) Pursuant to O.C.G.A. § 13-8-56(d),

> [a]ny restriction that operates during the term of an
> . . . independent contractor relationship . . . shall
> not be considered unreasonable because it lacks any
> specific limitation upon scope of activity, duration, or
> geographic area so long as it promotes or protects the
> purpose or subject matter of the agreement or
> relationship or deters any potential conflict of
> interest.

Here, Section 2.2 operated during the term of the 2018 Agreement and does not seem to contain a limit on the scope of prohibited activity or geographic area. Therefore, to be enforceable, Section 2.2 must "promote[] or protect[] the purpose or subject matter of the agreement or relationship or deters any potential conflict of interest." O.C.G.A. § 13-8-56(d). The Court finds that Section 2.2, as written, is broader than necessary to deter potential conflicts of interest between Plaintiff and Defendant Trammell during their business relationship. Moreover, Plaintiff has not shown a legitimate business interest in prohibiting Defendant Trammell from engaging in any business, whether or not that business was in competition with Plaintiff. See O.C.G.A. § 13-8-55 ("The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.").

Nevertheless, "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as

22

originally drafted by the parties." O.C.G.A. § 13-8-53(d). "[T]he term 'modify' used in O.C.G.A. § 13-8-53(d) means the blue-pencil approach . . . ." LifeBrite Labs., LLC v. Cooksey, No. 1:15-CV-4309-TWT, 2016 WL 7840217, at *8 (N.D. Ga. Dec. 9, 2016). When modifying an overly broad restrictive covenant, a court may "blue-pencil" the provision by construing it narrowly to "grant only the relief reasonably necessary to protect" the business interests of the employer. O.C.G.A. § 13-8-54(b); PointeNorth Ins. Group, 2011 WL 4601028, at *3 ("[W]hile the Court finds the restrictive covenants overbroad in that they extend to 'any of the Employer's clients'—not just the ones with whom [the former employee] interacted—the Court may remedy that finding by blue penciling the provision to only apply to customers that the [employee] contacted and assisted . . . ."); O.C.G.A. 13-8-54(a) ("A court shall construe a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.").

Although Plaintiff has not established a legitimate business interest in preventing Defendant Trammell from engaging in any work, Plaintiff has shown it has an interest in protecting the relationships Defendant Trammell cultivated within the dental products market. Accordingly, the Court modifies Section 2.2 to prohibit Defendant Trammell, during the term of the 2018 Agreement,

from working for a business in competition with Plaintiff. This prohibition would include a business that operates within the territory defined in Exhibit A and manufactures, produces, or sells synthetic and restorative dental products to dental professionals. To this extent, the Court finds that Section 2.2 is enforceable. Accordingly, Defendants' motion for summary judgment on Count II is **DENIED** and Section 2.1 and Section 2.2 are enforceable to the extent explained above.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Doc. 19) is **DENIED**. Accordingly, Section 2.1, Section 2.2, and Section 6.1.2 are enforceable against Defendant Trammell to the extent explained in this Order.

SO ORDERED this _18th_ day of May 2020.

<br>

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

24